# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

FILED IN OPEN COURT
DEC - 2 2015
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:15cr120 |
| ) | |
| RONALD HENDERSON, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt.

1. The Defendant, RONALD HENDERSON was employed by the United States Postal Service from approximately 1992 to February 28, 2014.

2. On June 11, 2011, RONALD HENDERSON was employed with the Suffolk Post Office as a City Carrier. The Suffolk Post Office is located in the Eastern District of Virginia.

3. Beginning on or about June 11, 2011, and continuing until or about September 22, 2012, the Defendant, RONALD HENDERSON, fraudulently claimed workers' compensation benefits under the Federal Employees' Compensation Act ("FECA") from the Department of Labor ("DOL") and the United States Postal Service ("USPS").

4. FECA provides compensation to federal employees for personal injuries sustained during the performance of their duties. This compensation, which is covered in Title 5, Chapter 81, subchapter I, includes provisions for pay while disabled as well as for reimbursement for medical services and transportation and expenses incident to securing medical services. FECA claims are administered by the Office of Workers' Compensation Programs ("OWCP") in the Department



of Labor. The process for obtaining these benefits is triggered by the initial claim of an injury incurred in the performance of a duty as an employee of the United States government.

5. On May 6, 2011, RONALD HENDERSON saw his primary care physician, Dr. Amanze Ugoji, at the Cashie Medical Center, Windsor, North Carolina. During the consultation, HENDERSON inquired about pain he was experiencing in his right shoulder. Dr. Ugoji referred HENDERSON to Dr. Lawrence Larabee, a specialist in Ahoskie, North Carolina.

6. On May 19, 2011, Dr. Larabee provided some medical treatment for HENDERSON's shoulder. On May 20, 2011, HENDERSON called Dr. Larabee to ask him if he could have injured his shoulder as a result of dancing.

7. After another consultation with Dr. Ugoji on June 2, 2011, Dr. Ugoji conducted magnetic resonance imaging ("MRI") at Chowan Hospital, North Carolina on or about June 10, 2011, and Dr. Ugoji diagnosed HENDERSON with a torn rotator cuff.

8. On or about June 11, 2011, HENDERSON went to work at the post office at approximately 8:30am. He did not report any injury to his shoulder to his supervisors.

9. He began his duties by conducting a vehicle safety check and then by casing, i.e. sorting, his mail. At approximately 9:00am, he reported to his supervisor that, as he was casing his mail, he reached up and felt a sharp pain in his right shoulder. A supervisor took him to Obici Hospital, Suffolk, Virginia, where he was referred to a specialist.

10. On June 11, 2011, HENDERSON filed a workers' compensation claim for a sprain of his right rotator cuff/shoulder and upper arm. In his claim, he certified under penalty of perjury that the cause of his injury was from casing mail that day and that the injury was sustained in the performance of his duties. However, in truth, as the defendant well knew, the injury to his shoulder was not sustained in the performance of his duties.



11. The claim was administratively routed through his supervisor at the post office in Suffolk and through the United States Post Office's Health and Resource Management Office in Richmond, Virginia.

12. On or about June 28, 2011, the DOL accepted HENDERSON's claim. HENDERSON stopped working for USPS on October 1, 2011, and later underwent surgery to repair his rotator cuff.

13. Based on this fraudulent claim of work-related injury, HENDERSON received special benefits under Title 5, Chapter 81, subchapter I, in three ways: (1) compensatory pay based on his inability to work; (2) payments to medical service providers for medical treatment and medication; and (3) reimbursement for travel costs related to securing medical treatment and medication.

14. On or about October 24, 2011, HENDERSON began filing claims for compensatory pay based on his inability to work.

15. Throughout the time period between June 11, 2011, and May 11, 2012, HENDERSON received medical treatment related to his shoulder injury that was paid as a result of benefits derived from Title 5, Chapter 81, subchapter I (federal employees).

16. On or about August 15, 2011, HENDERSON began to file OWCP Forms 957 (Medical Travel Refund Requests) requesting compensation for medical-related travel, such as travel for doctors' appointments and trips to pharmacies. Each OWCP Form includes a certification that the applicant must sign, stating that the claims are true and accurate. Additionally, applicants must list the date of the treatment-related travel, the name and address of the medical facility travelled to, and the distance travelled by the applicant. OWCP determines the reimbursement





amount by multiplying the number of miles in the trip (either one-way or round-trip) by the specified dollar amount per mile as established by federal regulations. .

17. From August 2011 through May 2012, HENDERSON submitted approximately 969 refund requests on OWCP Forms, claiming to have numerous appointments, surgeries, and visits with various physicians and pharmacies. Many of these claims were fabricated, because HENDERSON did not have appointments or did not visit pharmacies as he claimed that he had. Additionally, for instances in which he had actual appointments, HENDERSON exaggerated the distances traveled.

18. For example, on February 28, 2012, HENDERSON submitted a claim for roundtrip travel between his home and various locations as follows: 200 miles to Walmart Super Center Pharmacy (Elizabeth City, North Carolina), 46 miles to a Walmart Pharmacy Lab (Ahoskie, North Carolina), 48 miles to Ahoskie/Roanoke Chowan Pain Care and Rehabilitation Center (Ahoskie, North Carolina), 200 miles to Walgreen's Pharmacy (Greenville, North Carolina), 42 miles to Cashie Medical Care Center/Bertie Memorial Hospital Medical Care Clinic (Windsor, North Carolina), 200 miles to Coastal Albemarle Orthopedic Medical Care Center/Chowan County Orthopaedics Specialists (Edenton, North Carolina), 200 miles to Pitt Memorial Hospital (Greenville, North Carolina), 200 miles to Walmart Super Center Pharmacy (Greenville, North Carolina), and 200 miles to Greenville's Healthwise Pharmacy (Greenville, North Carolina). None of these clinics, pharmacies, or locations have any record of appointments or visits by HENDERSON on that date. In this claim, HENDERSON falsely stated that he travelled 1,336 total miles on February 28, 2012, and falsely claimed $681.36 in compensation for travel expenses for that day alone.





19. HENDERSON claimed on numerous occasions that he travelled up to seven (7) days per week and drove over one thousand miles in a day to receive medical treatment.

20. The false travel claims totaled approximately $93,281.

21. In addition to the false claims submitted in conjunction with his purported work-related injury, HENDERSON received other money to which he was not entitled. HENDERSON continued to receive injury-related compensation even after he was in a work status and was earning his normal wages.

22. HENDERSON was able to "double-dip" because he failed to inform the DOL that he had returned to work. According to the July 28, 2011, claim acceptance letter, HENDERSON was required to inform the DOL of his return to work so that agency could stop his federal employees' compensation payments.

23. As a result, HENDERSON received monthly workers' compensation payments totaling approximately $16,018 from the DOL for the time period covering May 6, 2012, through September 22, 2012, even though he was in a work status during that time.

24. On or about August 1, 2013, special agents from the USPS's Office of the Inspector General met with HENDERSON. During the interview, when discussing travel claims to Orthopedic East in Greenville, North Carolina, for July 2011, he was told that there was no record of patient visits for him until October 2011. HENDERSON stated that he had traveled there to check out the office. In a sworn written statement, HENDERSON wrote that he had been seen by a family physician on June 10, 2011, for problems associated with his right shoulder. He also stated that he would be willing to pay back some of the money issued to him for the fraudulent travel vouchers.







25. In total, from June 11, 2011, to May 12, 2011, the United States government paid out approximately $157,000, based on HENDERSON's fraudulent claim and failure to report his return to work.

                            DANA J. BOENTE
                            UNITED STATES ATTORNEY

By: _____
                            Randy Stoker
                            Assistant United States Attorney
                            Virginia State Bar No. 73455
                            Attorney for the United States
                            United States Attorney's Office
                            101 West Main Street, Suite 8000
                            Norfolk, Virginia 23510
                            Office Number – 757-441-6331
                            Facsimile Number 757-441-6689
                            Email Address: Randy.Stoker@usdoj.gov

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, RONALD HENDERSON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*(signed)*
Ronald Henderson

I am RONALD HENDERSON's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

*(signed)*
Nicholas Renninger, Esq.
Counsel for Defendant